IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**BETTY VIGIL,**

     Plaintiff,

vs.                                               Civ. No. 99-858 MV/DJS

**KENNETH S. APFEL,**
**Commissioner of Social Security,**

     Defendant.


**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[1]

1.  Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing. The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. Williams v.

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

Bowen, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.     Plaintiff applied for Disability Insurance Benefits on January 24, 1995 alleging a disability since January 6, 1994.  Tr. 106-109.  The application was denied initially and on reconsideration and following a hearing.  Tr. 119-22, 126-28 and 293-307.  The Appeals Council granted Plaintiff's request for review and remanded the matter to the Administrative Law Judge (ALJ) for further proceedings.  Tr. 312-14.  The ALJ held a supplemental hearing and on August 26, 1998 issued a second decision denying benefits. Tr. 11-26.  On July 6, 1999, the Appeals Council affirmed that decision as the Commissioner's final decision.  Tr. 7-8. Plaintiff timely filed her Complaint on August 3, 1999.

**Statement of the Facts**

3.     Plaintiff alleges a disability due to asthma, bronchitis and depression.  Tr. 136.  Plaintiff was born on January 6, 1940. She applied for disability insurance benefits at age 55.  She has a high school education and some computer training.  Her past work consists of 20 years as a teacher's aide in an elementary school reading program.  Tr. 140, 283.

**Issues**

4.     Plaintiff alleges the ALJ erred because the substantial evidence does not support the ALJ's decision and his decision is contrary to law.  Specifically, Plaintiff alleges that: 1) the ALJ

2

improperly increased Plaintiff's residual functional capacity (RFC) to conform his denial of benefits with the vocational expert's testimony; 2) the ALJ's finding that Plaintiff's asthma imposed no work-related limitation is not supported by substantial evidence and is the result of error; 3) the ALJ failed to properly apply the treating physician rule; 4)the ALJ erred in failing to consider the side-effects of Plaintiff's medications; 5) the ALJ erred by failing to consider the functional effects of all of Plaintiff's medically determined impairments in determining RFC; and 6) the ALJ erred in failing to order a consultative mental examination.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.   Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).   Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).   It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.   Id.   It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.   However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim

is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.   To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform

work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

    8.   Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies.  20 C.F.R. §404.1566(d).  This aids the Commissioner in determining what specific job types exist in the national economy for the claimant.  To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity.  20 C.F.R. §§404.1545, 404.1563-.1565.  These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled.  20 C.F.R. §404.1569.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

    9.   Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive

but merely form a framework for disability determination.  Id.  In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id.  If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984).  However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids.  Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.    The substantial evidence in the record does not support the ALJ's analysis or decision.  Further, his decision is contrary to the law.  To summarize the medical evidence in the record, it is beyond dispute that the Plaintiff has severe chronic asthma.  When she takes the required steroids to adequately control her condition, she suffers from severe side-effects.  When she decreases her steroids, she suffers from her asthma.  The ALJ's reliance on such notations in the medical records that Plaintiff was doing "better", doing "well", and "very well controlled" is, at best, misplaced when analyzed in context.

11. Dr. Richard W. Honsinger of the Allergy & Asthma Associates of Northern New Mexico, Los Alamos Medical Center has been treating the Plaintiff since at least 1994. In November of 1994, Dr. Honsinger noted that when he "tried to taper Prednisone down to lower doses she had a rather severe flare of asthma and required urgent care." Tr. 204. In December of 1994 he noted that Plaintiff's "asthma is increased on the day she is off Prednisone." Tr. 201. In February of 1995, another treating physician, Dr. Ashley D. Pond, diagnosed the Plaintiff with "chronic asthmatic bronchitis." Tr. 233. At that time her lungs had "diminished breath sounds w/diffuse wheezing in all lung fields." Id. Dr. Michael Kaufman, who treated the Plaintiff when she was hospitalized, diagnosed the Plaintiff in March of 1995 as having "[a]sthma, unretractable and worsening." Tr. 217. In August of 1995 Dr. Kaufman noted that "[a]ttempts to reduce her Prednisone have been unsuccessful." In December of 1995 Dr. Kaufman increased her dosage of Prednisone to try to control "hacking 'asthmatic' cough." Tr. 239.

12. In August of 1997, Dr. Honsinger was still changing Plaintiff's medication is an attempt to control her asthma. She also required a high dosage of steroids to try to get her some "temporary" improvement. Tr. 371. In 1998 she suffered an acute asthma attack. She had forgotten her inhaler. An ambulance was called and she was given a nebulizer treatment. Upon return to Dr. Honsinger he found that she still had "diffuse expiratory wheezing

and moderate respiratory obstruction on spirometry." Tr. 424. Finally, a physician in Dr. Kaufman's office noted that plaintiff had asthma that was "[l]ongstanding & difficult to treat." Tr. 344.

    13.   When Plaintiff took increased dosages of Prednisone her asthma was better and the physicians do note there was improvement. However, the side effects are marked. In 1994 Dr. Honsinger was concerned with the effect of the steroids on her liver. Tr. 206. He wrote that he was "concerned about the production of liver disease, however, she is a steroid dependent asthmatic and thus needs at least a six month course of INH." Id. He further suspected that her nights sweats with diaphoresis was a result of the steroids. Tr. 209. Her numbness in the hands and face was found to be "secondary to the facial edema related to steroids and some nerve entrapment." Id. In response to her complaints of lapses in memory and to rule of multiple sclerosis a magnetic resonance imaging (MRI) of the brain was ordered. The physician reading the MRI concluded, *inter alia*, that Plaintiff had "generalized cerebral atrophy" that "is somewhat advanced for age, presumably related to chronic steroid use for her medical condition of asthma." Tr. 229. Further, because of the use of Albuterol, Plaintiff becomes hypokalemic and must take potassium pills. Tr. 201.

    14.   Further, the ALJ erred in finding that Dr. Honsinger was not a treating physician and that his opinion should not be given

great weight.  Tr. 19.  In his opinion, the ALJ wrote that "Dr. Honsinger is not considered a "treating physician" as of February 13, 1996, inasmuch as he had only examined the claimant on that one date."  As shown above, this is a serious error.[2]  Further, as shown above, Dr. Honsinger's opinion that Plaintiff is disabled is supported by his treatment notes and those of Plaintiff's other treating physicians.

15.   Further, the ALJ failed to consider Plaintiff's impairments in combination which requires a remand.

16.   Finally, because the court will recommend a remand, the court will order that a consultative examination be performed. Plaintiff's treating physician, Dr. Honsinger, suggested a mental evaluation.  The record supports that there is a physical reason for Plaintiff's complaints.  Thus, there appears to be a "reasonable possibility" of the existence of a mental disability which reasonably would be expected to affect her ability to performed the "skilled" mental demands required of a teacher's aide. 20 C.F.R. Secs. 404.1517, 416.917;  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997).

**Recommended Disposition**

For these reasons, I recommend that Plaintiff's Motion to

---

[2]This error demonstrates the lack of attention Plaintiff's application has been given by the Commissioner.

Remand be granted for proceedings consistent with this analysis.

_____
**Don J. Svet**
**United States Magistrate Judge**